The plaintiffs, who are children and heirs-at-law of Hardy Barnes, deceased, brought this action against the defendants, the children and heirs-at-law of Reuben King, deceased, to Fall Term, 1871, to compel the said defendants to convey to them the legal title to two lots, Nos. 95 and 96, in the town of Lumberton, of which the plaintiffs alleged they owned the equity of redemption. The plaintiffs likewise sought to recover rents and profits.
The fact as disclosed by the record are, Hardy Brown, the ancestor of plaintiffs, and owner of the lots, the 13th December, 1853, conveyed the same to Reuben King, the ancestor of the defendants, by mortgage, to recover the sum of $850, which he owed King. Brown being further indebted to others, on the 27th of December, 1853, a few days after the mortgage, executed a deed in trust to the Hon. R. S. French, trustee, for the purpose of securing the payment of certain debts therein described, and which conveyed to the trustee for that purpose, the two lots, Nos. 95 and 96, before spoken of, and 350 acres of land besides. In this deed of trust, the trustee was directed to sell the property conveyed, if the debts secured thereby was not paid before the 1st June, 1854. The debts not being paid by the the time limited, the trustee, as directed, on the 13th September, 1854, sold the property, and King, before mentioned, *Page 440 
became the purchaser of all of it, to-wit: the lots, Nos. 95 and 96, at $1,000, and the 350 acres of land at $995, making the aggregate of $1,995, which sum King paid to the trustee, who applied it in payment of the debts directed by the trust. French, the trustee, on the 13th September, 1854, executed to King, the purchaser, a deed in fee simple for the said lots and lands. This deed was not proved nor registered until 8th May, 1869, sometime after the death of King.
On the 28th January, 1869, King and wife made a need in fee simple to W. H. Barnes, a son of Hardy, and one of the plaintiffs for the 350 acres of land, in consideration of $400, of which sum, at the date of the deed, $200 was due. And during his last illness, King made a will, in which he devised the lots to his married daughter, Amanda, wife of J. W. Brown, both defendants.
The plaintiffs allege, that while the deed from the trustee, French, to King, was absolute on its face, yet there was an understanding and parol agreement between Barnes and King, whereby, as soon as Barnes should pay the mortgage debt of $800, and the $1,995, paid to the trustee, King would reconvey all the property, lots and land to him That those sums were paid to King in the lifetime of Barnes. The plaintiffs insist that inasmuch as King retained the title to the lots, Nos. 94 and 96, up to the time of his death, that they, as heirs-at-law of Barnes, are now entitled to a reconveyance from the heirs-at-law of King, or from his devisees, the defendants, W. J. Brown and wife, Amanda, and also to an account for rents and profits for use, c.
In support of the allegation of their complaint, the plaintiffs called Mary, the widow of Hardy Brown, their ancestor, and also one of the plaintiffs of record, as guardian of D. W. Barnes, a minor child of the said Hardy. She testified that between the years 1856 and 1858, she made two payments to King for her husband, one of $300 and another of $600. *Page 441 
She expected the payments were made on the mortgage debt. It was then proposed on the part of the plaintiffs to prove by her the declarations of King in regard to the matter. Objected to by defendant, because, being a party and having a right of dower, King being dead, the testimony was excluded by section 343, C. C. P., page 129. His Honor sustained the objection, holding that the witness could speak of the payments and of what occurred at the time they were made, as a part of the res gestae, but of no other conversation with King. Plaintiff showed a release from the witness of all her right of dower, and any and all her interest in the recovery. His Honor still held the testimony, incompetent and the plaintiffs again excepted.
The defendants denied the allegations in the plaintiffs' complaint, and insisted that the lots, Nos. 95 and 96 were the absolute property of W. J. Brown and wife, as devisees of King, and introduced testimony to support the defenses set up in their answer.
After the close of the evidence, the plaintiffs asked his Honor to charge:
1. That upon the execution of the mortgage by Barnes to King, 13th December, 1853, King became the legal, and Barnes the equitable owner of the land in controversy; and that that relation could not be changed, but remains the same until the mortgage is redeemed or foreclosed.
2. That when King purchased of French, the trustee, the mortgaged premises, he is considered in law as having purchased for the benefit of the mortgagee, not the equity of redemption, but a mere incumbrance on the land, and that a verbal contract to purchase and hold until Barnes could redeem, does not come within the statute of frauds, but may be enforced.
By the defendants, his Honor was asked to charge the jury:
1. That a verbal agreement, even if proved, between King *Page 442 
and Barnes, that King would reconvey to Barnes the title he got from French, the trustee, would be null and void by reason of the statute of frauds, and could not be enforced.
2. While denying there was such agreement, yet if there was, it was void for want of a consideration, King having paid his own money for the property.
His Honor, after stating the testimony, remarked that he would reserve his opinion on the questions of law raised by the counsel, and submitted to the jury, to respond to the following issues:
1. Was there a verbal agreement between King and Barnes that so soon as Barnes should pay King the amount secured by the mortgage of the 13th December, 1853, to wit: $800, together with the $1,995, the purchase money paid by King to French, and the interest accruing thereon, that King would reconvey by deed in fee to Barnes and his heirs the lots, Nos. 95 and 96?
2. Has the money been repaid to King in full?
The jury found the negative of the issues submitted, and against the plaintiffs, who submitted to the Court that they were entitled to an account non obstante veredictu.
His Honor being of opinion that the incidental relief shared the fate of the principal relief prayed for in the complaint, and was rendered unattainable by the findings of the jury on the issues submitted to them, refused the motion for an account and gave judgment against the plaintiff for costs.
Rule for a new trial; rule discharged; judgment and appeal.
At the request of the appellants, the whole of the evidence taken in the case was appended to the statement made for this Court. This evidence being unnecessay [unnecessary] to an understanding of the Chief Justice's opinion is omitted. *Page 443 
In response to the second issue, the jury find "that the money has not been repaid to R. King in full." This leaves the question open whether the money has not been repaid to R. King "in part." There were two amounts, $800 secured by mortgage to King, and $1,995 paid by King to French as the price of the equity of redemption, and of a tract of 350 acres, not embraced in the mortgage.
Assume, as we must do from the finding of the jury, that the two amounts have not been paid in full, how does it appear that the $800, or the greater part of it, was not paid to R. King after he bought the equity of redemption, which was in 1854. Mary A. Barnes testified: "Between the years 1656 and 1858 I made two payments for my husband to Reuben King, one for $300, and the other for $600. I paid the money I expect on the mortgage debt."
If this, be true, it gives a very different aspect to the case from the one upon which his Honor based his decision, where King paid $1,995 for the equity of redemption, and the 350 acre tract, it was assumed that that the property was worth the price given for the equity of redemption over and above the mortgage debt. So if the transaction was a naked purchase of the equity of redemption, King having the legal title before, and acquiring by his purchase the equitable title, became the absolute owner as well in equity as at law. The $800 and interest was the price of the legal estate, and the amount paid for the equity of redemption was the price of the equitable estate.
Taking this to be so, as the defendants insist, upon what ground did King afterwards receive the $300 and the $600? He could only have received the money on the idea that his was not a naked purchase of the equity of redemption. *Page 444 
but was connected with a trust that Barnes was to have back the land on repayment in full; at all events it would give the plaintiff a right to have the money refunded.
Under the rules, without sending the case back, the Court directs this further issue.
"Did Reuben King, between the years 1856 and 1858, receive of Hardy Barnes by the hands of Mary A. Barnes, his wife, the sum of $300, and also the sum of $600, or any other amounts, to be applied in satisfaction of the mortgage debt, or of any other debt in in reference to the land.
This will be certified, and the case retained for the finding of the issue.
PER CURIAM. Decree accordingly.